UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

        Plaintiff,

vs.

CAROLINE MCLEAN, et al.,

        Defendants.
_____/

Civil Action No.
09-CV-13402

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER GRANTING RICHARD AND SHAWN MCLEAN'S MOTION FOR SUMMARY JUDGMENT AND ORDERING THE CLERK OF COURT TO DISBURSE FUNDS TO RICHARD AND SHAWN MCLEAN**

**I. INTRODUCTION**

This is an interpleader action involving the Employee Retirement Income Security Act ("ERISA"). Donald McLean, who was enrolled in his employer's life insurance plan for life insurance coverage in the amount $37,500, died on June 7, 2008. Donald's ex-wife, Caroline McLean, on the one hand, and his two sons, Richard and Shawn McLean, on the other hand, claim an entitlement to the benefits.[1] Richard and Shawn have filed a Motion for Summary Judgment in which they ask the Court to resolve the rival claims. The matter is fully briefed and oral argument was held on April 28, 2010. For the reasons that follow, Richard and Shawn are entitled to the insurance benefits and their motion will be granted.

---

[1] Pursuant to a stipulated order entered on December 23, 2009, Plaintiff Metropolitan Life Insurance Company ("MetLife") has been dismissed from this action with prejudice after depositing the group life insurance benefits in an interest-bearing account with the clerk of this court. *See* docket entry 20.

1

## II. BACKGROUND

Donald was an enrollee in his employer's life insurance plan ("the plan") for life insurance coverage in the amount $37,500. On August 18, 1994, Donald designated his then-wife, Caroline, as the beneficiary. Compl. at Ex. B.

Donald and Caroline divorced on September 15, 2000. One of the decrees in their divorce judgment reads:

> **IT IS FURTHER ORDERED** that any rights of either party in any policy or contract of life endowment or annuity insurance of the other as beneficiary are hereby extinguished unless specifically preserved by this Judgment.

Mot. at Ex. 1.

Shortly after the divorce, Donald completed a change of beneficiary form designating his two sons, Richard and Shawn, as the primary beneficiaries under the plan (50% each). Mot. at Ex. 2. According to the Complaint, the new beneficiary designation form "was rejected by Hewitt Associates ("Hewitt"), the record keeper for [Donald's employer] . . . , because the names of the [new] beneficiaries, the percentages, [Donald's] signature, and the date . . . are illegible." Compl. at ¶ 14. A copy of the illegible beneficiary form is attached as Exhibit D to the Complaint.

As stated in the Complaint,

> MetLife has also received a legible copy of an October 14, 2000, beneficiary designation form, which names Richard McLean and Shawn McLean, as co-equal primary beneficiaries of the Plan Benefits.

Compl. at ¶ 15. The legible copy of the beneficiary designation form is attached as Exhibit E to the Complaint and as Exhibit 2 to Richard and Shawn's motion. The form is signed by Donald and hand dated October 14, 2000. *Id*.

The plan document states that "[a]ny change of beneficiary becomes effective the date you

sign the form . . ." Compl. at ¶ A, p. 20.

Donald died on June 7, 2008. Compl. at Ex. C.

On June 23, 2008, and October 12, 2008, Richard completed a statement of claim for the plan benefits. Compl. at Ex. G. On December 9, 2008, Shawn completed a statement of claim for the plan benefits. Compl. at Ex. H.

Additionally, Richard and Shawn have attached to their motion separate but substantially identical affidavits. The affidavits state, in relevant part:

> 2. I had multiple conversations with my father Donald McLean prior to his divorce whereby he specifically stated to me that he filled out the necessary paperwork to remove Caroline McLean as a beneficiary to his insurance policies and replaced it with both myself and my brother . . .
>
> 3. I have had multiple conversations with Caroline McLean seeking her help and assistance in contacting MetLife to inform them that she waived all her rights to my father's life insurance policies and that [Caroline] each time agreed to do so as long as my brother and I agree to pay her a sum of $2,500 for her to admit to such.
>
> 4. During my various conversations with Caroline McLean she specifically admitted that she knew she had no right to my father's life insurance proceeds and that she did not want them until she found out that I needed her to contact MetLife to inform them of those facts.
>
> 5. Each time I have spoken with Caroline McLean, she has basically black mailed me into paying her for her to admit the facts outlined in the accompanying Motion for Summary Judgment and stated she wouldn't admit anything unless she was paid $2,5000 or more to do so.

Mot. at Ex. 3. These allegations have not been denied by Caroline, who has attached no evidence to her response brief.

The present interpleader action was filed on August 27, 2009. According to the Complaint,

> 19. MetLife cannot determine whether [Donald] substantially complied

3

     with the Plan requirements when he executed the October 14, 2000, beneficiary designation form.

20.  If a court were to determine that [Donald] substantially complied with the terms of the Plan when he executed the October 14, 2000, beneficiary designation form, then the Plan Benefits would be payable in equal shares to Richard McLean and Shawn McLean.

21.  If a court were to determine that [Donald] did not substantially comply with the terms of the Plan when he executed the October 14, 2000, beneficiary designation form, then the Plan Benefits would be payable to Caroline McLean, based on the August 18, 1994, beneficiary designation form.

Compl. at ¶¶ 19-21. As stated in footnote 1, above, MetLife has deposited $37,500, the amount of the life insurance benefits at issue in this case, in an account with the clerk of this court.

### III. ANALYSIS

#### A. The Parties' Arguments

  Richard and Shawn filed their Motion for Summary Judgment on December 11, 2009. They argue that Michigan law, and not federal law, governs this case. The two contend that Donald substantially complied with all change of beneficiary requirements and that, as of October 14, 2000, they replaced Caroline as the plan beneficiaries. They rely exclusively on very old case law in support of their argument. The cases cited by Richard and Shawn include: *Aetna Life Ins. Co. v. Brooks*, 96 Mich. App. 310, 315-316 (1980) ("[i]t is well settled in Michigan that substantial compliance with change-of-beneficiary requirements is sufficient to effect a substitution. When an insured has done all he can to change a beneficiary, the original beneficiary loses all rights under the policy" (citations omitted)); *Aetna Life Ins. Co. v. Parker*, 130 F. Supp. 97 (E.D. Mich. 1955) ("[w]here the insured takes a positive action which evidences his obvious desire for change of beneficiary, the courts will adopt such construction as will assist in carrying out such intention");

4

*Norris v. Norris*, 145 F.2d 99, 101 (5th Cir. 1944) (same).

Caroline, in her response brief, advances two arguments. First, Caroline contends that Richard and Shawn's Motion for Summary Judgment is premature and violates the Court's scheduling order dated December 17, 2009, which prohibits the parties from filing a motion for summary judgment before discovery has been completed "absent special circumstances to be specified in any premature motion." *See* docket entry 18. The discovery cut-off date in this case was April 7, 2010. Richard and Shawn do not specify any "special circumstances" in their brief, nor do they acknowledge or respond to Caroline's argument that their motion is premature.[2]

Second, Caroline broadly states that there are genuine issues of material fact as to who is entitled to the insurance benefits in this case. She appears to assert that there are fact issues with regard to whether Donald successfully effected a change in beneficiary following the divorce. Caroline relies upon a recent United States Supreme Court case, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 129 S. Ct. 865 (2009), discussed below, in support of her argument. Caroline attaches no evidence to her response brief.

### B. Federal Law Governs

As stated above, Richard and Shawn state that Michigan law governs this dispute. Caroline does not explicitly disagree; however, her reliance on the Supreme Court's decision in *Kennedy*, an ERISA case, suggests that she may believe otherwise. For the reasons that follow, federal law

---

[2] In any case, the Court rejects Caroline's argument that the present Motion for Summary Judgment is premature because Richard and Shawn filed their motion before the scheduling order was issued. Thus, the filing of the motion did not violate any order that was in place at the time. In addition, during oral argument, Caroline's attorney did not indicate the existence of any new evidence discovered or otherwise obtained between the filing of the present motion and the discovery cut-off date. Therefore, even if the present motion is premature, Caroline has not suffered any prejudice.

5

controls.

This Court recently addressed the issue of when ERISA preempts state law. *See Starling v. Starling*, No. 09-CV-12147, 2009 WL 3628014 (E.D. Mich. Oct. 30, 2009) (unpublished). There, the Court wrote:

> ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "This preemption provision is to be construed broadly; a law 'relates to' an ERISA plan 'if it has a connection with or reference to such a plan.'" *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). As stated by the Sixth Circuit,
>
>> [t]he United States Supreme Court has held that Congress' intent in enacting ERISA was to completely preempt the area of employee benefit plans and to make regulation of benefit plans solely a federal concern. The Court consistently emphasizes the broad scope of preemption under ERISA. Thus, only those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted. This circuit, too, has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA. It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.
>
> *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (citations omitted). *See also Drescher v. Union Underwear Co., Inc.*, 858 F. Supp. 653, 656 (W.D. Ky. 1994) ("[a] claim too remote, tenuous, or peripheral to relate to an ERISA plan simply cannot, except in the most extraordinary circumstances, constitute a claim to recover benefits, enforce rights, or clarify the terms of an ERISA plan under § 1132") . . . .
>
> Additionally, on at least two occasions, the Sixth Circuit has held that federal law—and not state law—governs the determination of whether an ex-spouse waived his or her right to ERISA benefits by virtue of a divorce judgment issued by a state court. In *McMillan*, the ex-wife of the decedent, on the one hand, and the widow of the decedent, on the other hand, claimed the proceeds of the decedent's two ERISA plans. 913 F.2d at 310. When the decedent was married to his ex-wife, he named her as the beneficiary to the plans. *Id*. at 311. The two later got divorced, at which point they signed a

joint settlement in which they agreed that the decedent would receive all property not otherwise disposed of in the agreement. *Id.* However, the decedent never changed the beneficiary designation in connection with his two plans and at the time of the decedent's death, the ex-spouse remained the beneficiary named in the plan documents. *Id.* The trial court granted summary judgment in favor of the widow, concluding after applying state law that the ex-spouse had waived her right to the proceeds by virtue of the joint settlement entered into in the divorce proceedings. *Id.* The Sixth Circuit reversed, holding that (1) federal law—and not state law—applies to the waiver analysis, (2) the plan documents controlled in accordance with "the explicit provisions of ERISA," and (3) the ex-spouse was therefore entitled to the benefits under the ERISA plans. *Id.* at 311-312.

*Id.* at **2-3.

Applying the law collected by this Court in *Starling* to the facts of the present case, there can be no doubt that federal law, and not state law, controls. The plan at issue in this case is "an ERISA-regulated employee welfare benefit plan." Compl. at ¶ 7. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). As stated by the Sixth Circuit, "[t]he designation of beneficiaries plainly relates to . . . ERISA plans." *McMillan*, 913 F.2d at 311. This case concerns the designation of beneficiaries and specifically, who is entitled to the benefits of an ERISA-governed plan. Federal law controls this question. Thus, the state cases cited by Richard and Shawn in support of their motion are irrelevant here.

### C. Richard and Shawn Are Entitled to the Plan Benefits

Having determined that federal law controls, the question becomes: who is entitled to the plan benefits under federal law – Caroline, or Richard and Shawn?

As recently stated by another court in this district,

> ERISA requires plan administrators to discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Where the documents and instruments governing the plan

7

> provide for the designation of beneficiaries, those provisions control. *McMillan v. Parrott*, 913 F.2d 310, 311-12 (6th Cir.1990). The Supreme Court's recent decision in *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. ----, 129 S.Ct. 865, 172 L.Ed.2d 662 (Jan. 26, 2009) reinforced the longstanding "plan documents rule" and reiterated the numerous reasons why it remains a bedrock principle of ERISA. "ERISA requires 'every employee benefit plan [to] be established pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1), 'specifying the basis on which payments are made to and from the plan,' § 1102(b)(4)." 129 S.Ct. at. 875. Under the plan documents rule, payments from the plan are to be made in accordance with the plan documents. *Id.* The Supreme Court also stressed the importance of "holding the line" and not "blur[ring] the bright-line requirement to follow plan documents in distributing benefits." *Id.* at 876. The Supreme Court noted that "the cost of less certain rules would be too plain. Plan administrators would be forced "to examine a multitude of external documents that might purport to affect the dispensation of benefits," *Id.* (quoting *Altobelli v. IBM Corp.*, 77 F.3d 78, 82-83 (4th Cir. 1996) (Wilkinson, C. J., dissenting)).

*Young v. Anderson*, No. 08-14621, 2009 WL 1133492, at *3 (E.D. Mich. Apr. 27, 2009) (unpublished).

The Complaint in this case states that Hewitt rejected Donald's change in beneficiary form, dated October 14, 2000, as illegible. Compl. at ¶ 14. The Complaint also states that MetLife "has also received a legible copy of an October 14, 2000, beneficiary form . . ." Compl. at ¶ 15. The legible copy is in evidence. *See* Compl. at Ex. E. It names Richard and Shawn as co-equal beneficiaries of the plan. The document is signed and dated by Donald. Caroline has not challenged the authenticity of the signature or advanced any sort of fraud allegation with regard to the change in beneficiary form.

"ERISA requires plan administrators to discharge their duties 'in accordance with the documents and instruments governing the plan.'" *Young*, 2009 WL 1133492, at *3 (quoting 29 U.S.C. § 1104(a)(1)(D)). The plan document states that "[a]ny change of beneficiary becomes effective the date you sign the form . . ." Compl. at Ex. A, p. 20. Thus, Donald effected the change

in beneficiary (from Caroline to Richard and Shawn) the moment he signed the form on October 14, 2000. The fact that Hewitt somehow received an illegible copy of the form is irrelevant; the plan document says that any change becomes effective on the date the form is signed – not on the date a legible copy of the form is received by the employer's record-keeper. On October 14, 2000, Richard and Shawn became co-equal beneficiaries. They are entitled to the proceeds in accordance with the "plan documents" rule.

Moreover, the Court notes that Caroline's purported waiver of her right to the plan benefits via the divorce decree is irrelevant for the present purposes. The instructions on the change of beneficiary form read, in pertinent part: "if an existing beneficiary waives or is removed as beneficiary in a divorce judgment or other instrument, you must also file this form [the plan's change in beneficiary form] or the change will not become effective." Compl. at Ex. E. Thus, the waiver contained in the divorce decree is entirely irrelevant for the present purposes.

## IV. CONCLUSION AND ORDER

For the reasons stated above, this Court has determined that Donald substantially complied with the plan requirements; Richard and Shawn's Motion for Summary Judgment is granted. The Clerk of Court shall disburse the plan benefits as follows: 50% to Richard; 50% to Shawn.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: April 30, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 30, 2010.

                S/Denise Goodine
                Case Manager